JUDGE SCHOFIELD

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

Benjamin MacKinnon

_____

Write the full name of each plaintiff.

-against-

The Financial Times

_____

_____

_____

Write the full name of each defendant. The names listed above must be identical to those contained in Section I.

19 CV 4999

_____CV_____
(Include case number if one has been assigned)

Do you want a jury trial?

☒ Yes    ☐ No

# EMPLOYMENT DISCRIMINATION COMPLAINT

| NOTICE |
| --- |
| The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2. |

Rev. 3/24/17

## I.    PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| Benjamin | | MacKinnon |
|---|---|---|
| First Name | Middle Initial | Last Name |

170 Delancey Street #4
_____
Street Address

| New York | NY | 10002 |
|---|---|---|
| County, City | State | Zip Code |

| 646-270-4273 | ben.mackinnon@gmail.com |
|---|---|
| Telephone Number | Email Address (if available) |

### B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:     The Financial Times
_____
Name
330 Hudson Street
_____
Address where defendant may be served

| New York | NY | 10013 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 2:
_____
Name

_____
Address where defendant may be served

| | | |
|---|---|---|
| County, City | State | Zip Code |

Defendant 3:

| | |
|---|---|
| Name | |

Address where defendant may be served

| County, City | State | Zip Code |
|---|---|---|

## II.    PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

**The Financial Times**

Name

**330 Hudson Street**

Address

| New York | NY | 10013 |
|---|---|---|
| County, City | State | Zip Code |

## III.    CAUSE OF ACTION

### A.  Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☒    **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

The defendant discriminated against me because of my (check only those that apply and explain):

☐    race: _____

☐    color: _____

☐    religion: _____

☐    sex: _____

☒    national origin: _____

Page 3

☒ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

    My race is: <u>Alienage Discrimination</u>

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

    I was born in the year: _____

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

    My disability or perceived disability is: _____

☐ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

    My disability or perceived disability is: _____

☐ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

**B.  Other Claims**

In addition to my federal claims listed above, I assert claims under:

☒ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☒ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☒ Other (may include other relevant federal, state, city, or county law):

    42USC1981, alienage discrimination. See Juarez v. Northwestern. See Rodriguez v. Procter & Gamble

## IV.    STATEMENT OF CLAIM

### A.  Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

☒  did not hire me

☐  terminated my employment

☐  did not promote me

☐  did not accommodate my disability

☐  provided me with terms and conditions of employment different from those of similar employees

☐  retaliated against me

☐  harassed me or created a hostile work environment

☐  other (specify): _____

_____

### B.  Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

See Attached _____

_____

_____

_____

_____

_____

_____

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## V.    ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

    ☒ Yes (Please attach a copy of the charge to this complaint.)

        When did you file your charge?    02/25/2019

    ☐ No

Have you received a Notice of Right to Sue from the EEOC?

    ☒ Yes (Please attach a copy of the Notice of Right to Sue.)

        What is the date on the Notice?    03/04/2019

        When did you receive the Notice?    03/14/2019

    ☐ No

## VI.    RELIEF

The relief I want the court to order is (check only those that apply):

    ☐ direct the defendant to hire me

    ☐ direct the defendant to re-employ me

    ☐ direct the defendant to promote me

    ☐ direct the defendant to reasonably accommodate my religion

    ☐ direct the defendant to reasonably accommodate my disability

    ☒ direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

Damages for lost wages, benefits and opportunity; pain and suffering, including professional embarrassment/humiliation and damage to reputation. Compensation for time and administrative/court costs required to represent pro se in lieu of legal fees,and additional punitive damages/compensation as the court deems appropriate. $600,000+

**United States District Court**
**Southern District of New York**

# Pro Se (Nonprisoner) Consent to Receive Documents Electronically

Parties who are not represented by an attorney and are not currently incarcerated may choose to receive documents in their cases electronically (by e-mail) instead of by regular mail. Receiving documents by regular mail is still an option, but if you would rather receive them only electronically, you must do the following:

1. Sign up for a PACER login and password by contacting PACER[1] at www.pacer.uscourts.gov or 1-800-676-6856;

2. Complete and sign this form.

If you consent to receive documents electronically, you will receive a Notice of Electronic Filing by e-mail each time a document is filed in your case. After receiving the notice, you are permitted one "free look" at the document by clicking on the hyperlinked document number in the e-mail.[2] Once you click the hyperlink and access the document, you may not be able to access the document for free again. After 15 days, the hyperlink will no longer provide free access. Any time that the hyperlink is accessed after the first "free look" or the 15 days, you will be asked for a PACER login and may be charged to view the document. For this reason, *you should print or save the document during the "free look" to avoid future charges.*

## IMPORTANT NOTICE

Under Rule 5 of the Federal Rules of Civil Procedure, Local Civil Rule 5.2, and the Court's Electronic Case Filing Rules & Instructions, documents may be served by electronic means. If you register for electronic service:

1. You will no longer receive documents in the mail;

2. If you do not view and download your documents during your "free look" and within 15 days of when the court sends the e-mail notice, you will be charged for looking at the documents;

3. This service does *not* allow you to electronically file your documents;

4. It will be your duty to regularly review the docket sheet of the case.[3]

---

[1] Public Access to Court Electronic Records (PACER) (www.pacer.uscourts.gov) is an electronic public access service that allows users to obtain case and docket information from federal appellate, district, and bankruptcy courts, and the PACER Case Locator over the internet.

[2] You must review the Court's actual order, decree, or judgment and not rely on the description in the email notice alone. *See* ECF Rule 4.3

[3] The docket sheet is the official record of all filings in a case. You can view the docket sheet, including images of electronically filed documents, using PACER or you can use one of the public access computers available in the Clerk's Office at the Court.

## VII.    PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that:
(1) the complaint is not being presented for an improper purpose (such as to harass,
cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are
supported by existing law or by a nonfrivolous argument to change existing law; (3) the
factual contentions have evidentiary support or, if specifically so identified, will likely
have evidentiary support after a reasonable opportunity for further investigation or
discovery; and (4) the complaint otherwise complies with the requirements of Federal
Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I
understand that my failure to keep a current address on file with the Clerk's Office may
result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to
proceed without prepayment of fees, each plaintiff must also submit an IFP application.

_05/29/2019_                                                                                        
Dated                                                                                        Plaintiff's Signature

**Benjamin**                                       **MacKinnon**
First Name                        Middle Initial                  Last Name

**170 Delancey Street #4**
Street Address

**New York**                                  **NY**                        **10002**
County, City                                    State                    Zip Code

**646-270-4273**                                **ben.mackinnon@gmail.com**
Telephone Number                                Email Address (if available)

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☒ Yes    ☐ No

     If you do consent to receive documents electronically, submit the completed form with your
     complaint. If you do not consent, please do not attach the form.

Page 7

# CONSENT TO ELECTRONIC SERVICE

I hereby consent to receive electronic service of notices and documents in my case(s) listed below. I affirm that:

1. I have regular access to my e-mail account and to the internet and will check regularly for Notices of Electronic Filing;

2. I have established a PACER account;

3. I understand that electronic service is service under Rule 5 of the Federal Rules of Civil Procedure and Rule 5.2 of the Local Civil Rules, and that I will no longer receive paper copies of case filings, including motions, decisions, orders, and other documents;

4. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address, or if I wish to cancel this consent to electronic service;

5. I understand that I must regularly review the docket sheet of my case so that I do not miss a filing; and

6. I understand that this consent applies only to the cases listed below and that if I file additional cases in which I would like to receive electronic service of notices of documents, I must file consent forms for those cases.

**Civil case(s) filed in the Southern District of New York:**

**Note:** This consent will apply to all cases that you have filed in this court, so please list all of your pending and terminated cases. For each case, include the case name and docket number (for example, John Doe v. New City, 10-CV-01234).

_____

_____

MacKinnon, Benjamin
_____
Name (Last, First, MI)

170 Delancey Street #4     New York          NY          10002
_____
Address                    City               State       Zip Code

646-270-4273                              ben.mackinnon@gmail.com
_____
Telephone Number                          E-mail Address

05/29/2019                                _____
_____
Date                                      Signature

**Return completed form to:**

Pro Se Intake Unit (Room 200)
500 Pearl Street
New York, NY 10007

### Facts of Complaint

The Financial Times intentionally discriminates against work-authorized non-citizens in the United States and shows preference for certain national origins in violation of The Civil Rights Act of 1866, 42 U.S.C § 1981, which grants all persons the rights to equally enforce contracts in all states and territories; and in violation of the New York City Human Rights Law, which prohibits discrimination on the basis of Alienage and Citizenship Status; and in violation of Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Law, which prohibits discrimination on the basis of National Origin.

I was hired by the Financial Times in February 2018. During the hiring process in December 2017/January 2018, much attention was given to my particular immigration status and how I was eligible to work, including improperly solicited questioning about my immigration status/work eligibility during the interview with Daniel ROTHMAN, Director of Research. When I was initially offered the position, I disclosed on my own volition that my then-current EAD/I-765 would expire in March 2018 and that, while I would be obtaining a new EAD, there would be a gap in employment authorization.

During my unemployment/USCIS processing period (roughly March 2018 through April 2018), I had regular contact with the Financial Times via email over the pending status of my case. At one point, the Financial Times head of HR, Kirsty DEVINE, wrote a letter to USCIS requesting that my EAD be expedited as they were eager to hire me and my absence was causing a variety of specific disruptions. This request for expedite was ultimately approved.

I informed ROTHMAN and DEVINE of this approval as soon as I was made aware. They sent email replies that were very enthusiastic and told me that, while they needed to wait for the physical EAD card to arrive by mail before giving me a new start date, they would begin the hiring process.

Some days later, I began receiving emails first separately from ROTHMAN and DEVINE, then in tandem, asking about the expiry date of my 'new work authorization'.  I told them I did not know and would have to wait for the physical card to arrive in the mail.  Once it arrived, I gave them the specific start and and end dates. DEVINE then requested a phone call between the three of us on May 8th 2018. On this phone call, various questions were pressed on my status and, in particular, the expiry date of the permit. They said they'd 'prefer if it was longer' and things of that nature, and then told me they'd have to re-evaluate internally and would get back to me shortly. ROTHMAN emailed on May 10th rescinding the offer of employment.

Ultimately, I was denied employment at the Financial Times explicitly as a result of my alienage, citizenship status and national origin. At the time of these events, I was a lawful temporary resident, legally admitted to the United States, with a pending Adjustment of Status application. I was issued an Employment Authorization Document/Advance Parole card without restrictions on employment. The expiry date of the document was April 24 2019, however I am entitled to unlimited renewals while the AOS is in processing. Additionally, the EAD remains valid for 180 days past the expiry date with a pending EAD renewal application.

It is flagrantly clear that had I miraculously become a US Citizen or permanent resident, or if I was of another alienage, citizenship or national origin more to the FT's liking, I would have been

hired immediately. For example, at one point, DEVINE inquired about any additional citizenships I may be entitled to, such as citizenship of the United Kingdom, which would enable me to work in a country with a Financial Times office. Furthermore, the actions taken against me by the FT have uncovered an insidious and secretive pattern of behavior that undoubtedly disqualifies certain work authorized non-citizens, such as DACA recipients,  from ever being fairly and equally considered for certain positions at the company.

**Preliminary Exhibit List**

**C-1, 5 pages -** email chain beginning April 27th, 2018 between MACKINNON, ROTHMAN and DEVINE containing notice of EAD Approval, intent to hire MACKINNON, separate ROTHMAN and DEVINE expiry date inquiries, telephone call appointment made

**C-2, 2 pages -** email chain beginning April 26th, 2018 between MACKINNON and ROTHMAN informing of approval, MACKINNON inquiry about start date, ROTHMAN "checks with HR" for start date

**C-3, 4 pages -** transcript of telephone conversation between MACKINNON, ROTHMAN and DEVINE

**C-4 -** email from ROTHMAN dated March 8th, 2018 showing continued communication and intent to hire MACKINNON

**C-5 -** email from ROTHMAN dated March 15th, 2018 showing continued communication and intent to hire MACKINNON

**C-6 -** letter from DEVINE for USCIS to request an expedite of MACKINNON EAD, showing intent to hire MACKINNON

**C-7 -** email from ROTHMAN dated April 10th, 2018 showing continued communication and intent to hire MACKINNON

**C-8 -** email from ROTHMAN dated May 10th informing MACKINNON of final decision to not hire

# Exhibit C-1

 Gmail                                    Ben MacKinnon <ben.mackinnon@gmail.com>

# I765 approved
16 messages

**Ben MacKinnon** <ben.mackinnon@gmail.com>                          Fri, Apr 27, 2018 at 11:37 AM
To: Kirsty Devine <kirsty.devine@ft.com>

Good morning Kirsty,

I have not heard from Daniel so I am guessing he may be on vacation. I'm pleased to report that the expedite  if it can really
    be called that  was successful and my EAD is "in production". Thank you for your letter, it  clearly helped.

I spoke with USCIS who informed me that the card's start date is actually the 25th and that I'm free to work now,
    however I know you have verification requirements on your end.

Given this, do you feel it necessary to wait for the physical card to arrive? I presume I should have it by the end of next
    week but it would, of course, be great to get back a bit sooner.

Please let me know your thoughts.

Thank you,

Ben

**Kirsty Devine** <kirsty.devine@ft.com>    Fri, Apr 27, 2018 at 11:58 AM To: Ben MacKinnon <ben.mackinnon@gmail.com>

Hi Ben
This is the type of email I like to receive on a Friday! Great news. Yes we will need you to have the card in hand so
    you can complete the I9 process so as soon as you get it, let me know and we can fix a start date. Kirsty
[Quoted text hidden]
**Kirsty Devine**
Head of US HR & Global Projects
Human Resources

US: +1 917 551 5131
M: +1 646 965 0465
330 Hudson Street, New York, NY 10013

*Twitter:* www.twitter.com/FTcareers



**FINANCIAL
TIMES**



*This email was sent by a company owned by Financial Times Group Limited ("FT Group"), registered office at Number One Southwark Bridge, London SE1 9HL. Registered in England and Wales with company number 879531. This email may contain confidential information. If you are not the intended recipient, please notify the sender immediately, delete all copies and do not distribute it further. It could also contain personal views which are not necessarily those of the FT Group. We may monitor outgoing or incoming emails as permitted by law.*

**Ben MacKinnon** <ben.mackinnon@gmail.com>                    Fri, Apr 27, 2018 at 2:00 PM
To: Kirsty Devine <kirsty.devine@ft.com>

Great news indeed! They should be giving me a tracking number once it's mailed so I'll send you and Daniel a note once I've got that ETA in view.

Many thanks,

Ben
[Quoted text hidden]

**Kirsty Devine** <kirsty.devine@ft.com>    Fri, Apr 27, 2018 at 2:12 PM To: Ben MacKinnon <ben.mackinnon@gmail.com>

great  thanks Ben
[Quoted text hidden]

**Ben MacKinnon** <ben.mackinnon@gmail.com>                    Thu, May 3, 2018 at 11:45 AM
To: Kirsty Devine <kirsty.devine@ft.com>, Daniel Rothman <daniel.rothman@ft.com>

Good morning Kirsty & Daniel,

The card is, at long last, mailed and set to be delivered by Saturday. I'd expect to have it for Monday, but since there have been unexpected delays at every step of the way, perhaps playing it safe and setting the start date for Tuesday would be best.

Let me know what works for you.

Thank you,

Ben

[Quoted text hidden]

**Kirsty Devine** <kirsty.devine@ft.com>                                Thu, May 3, 2018 at 11:56 AM
To: Ben MacKinnon <ben.mackinnon@gmail.com>
Cc: Daniel Rothman <daniel.rothman@ft.com>

That's great. I've sent this to Allen so he can prepare to onboard you next week.
   Kirsty
[Quoted text hidden]

---

**Kirsty Devine** <kirsty.devine@ft.com>                                Fri, May 4, 2018 at 11:11
To: Ben MacKinnon <ben.mackinnon@gmail.com>                              AM

Hi Ben
I meant to ask  how long is your new work authorization for?
thanks
Kirsty
[Quoted text hidden]

---

**Ben MacKinnon** <ben.mackinnon@gmail.com>                             Fri, May 4, 2018 at 7:08 PM
To: Kirsty Devine <kirsty.devine@ft.com>
Hi Kirsty,

My apologies for the delayed reply. It is at least a year but I won't know the exact dates until I receive the card.

Thanks,

Ben
[Quoted text hidden]

---

**Daniel Rothman** <daniel.rothman@ft.com>     Mon, May 7, 2018 at 7:11 PM To: Ben MacKinnon
<ben.mackinnon@gmail.com>

Hi Bennett, did you get the papers?   When is you authorized through?

_____

Daniel Rothman
Director of Insight
Financial Times
Office       9175515048
  Mobile      9173090486
  daniel.rothman@ft.co
m ⬜Inline images 1
[Quoted text hidden]
[Quoted text hidden]

---

**Ben MacKinnon** <ben.mackinnon@gmail.com> Mon, May 7, 2018 at 8:01 PM To: Daniel Rothman
<daniel.rothman@ft.com>

Hi,

The postal service is late delivering it... It seems anything that can possibly be delayed in this process will be....

I'm tracking it by the hour here:

https://tools.usps.com/go/TrackConfirmAction_input?origTrackNum=9205590153708408519157

Hi Kirsty,

Finally came today after further delay with the postal service. The dates are 4/25/20184/24/2019.

Thanks,


Ben
[Quoted text hidden]

---

**Kirsty Devine** <kirsty.devine@ft.com>                                    Tue, May 8, 2018 at 2:54 PM
To: Ben MacKinnon <ben.mackinnon@gmail.com>
Cc: Daniel Rothman <daniel.rothman@ft.com>

Hi Ben
Are you available at 4pm today for Daniel and I to give you a quick call? What's the best number to reach you on?
thanks Kirsty
[Quoted text hidden]

---

**Ben MacKinnon** <ben.mackinnon@gmail.com>                          Tue, May 8, 2018 at 3:10
To: Kirsty Devine <kirsty.devine@ft.com>                                    PM
Cc: Daniel Rothman <daniel.rothman@ft.com>

  Yes, sure. My number is 6462704273.
  [Quoted text hidden]

---

**Ben MacKinnon** <ben.mackinnon@gmail.com>                          Tue, May 8, 2018 at 5:33 PM
To: Kirsty Devine <kirsty.devine@ft.com>
Cc: Daniel Rothman <daniel.rothman@ft.com>

Hi,

I won't know the end date until I receive it but it'll be a year at minimum.

Let me know if you have more questions.

Ben
[Quoted text hidden]

---

**Kirsty Devine** <kirsty.devine@ft.com>                                      Tue, May 8, 2018 at 10:03 AM
To: Ben MacKinnon <ben.mackinnon@gmail.com>
Cc: Daniel Rothman <daniel.rothman@ft.com>

Hi Ben
I was just chatting with Daniel and I see you are still waiting for the card to be delivered. When you receive it could you
   advise how long it's for and we'll take it from there.
thanks Kirsty
[Quoted text hidden]

---

**Ben MacKinnon** <ben.mackinnon@gmail.com>                                   Tue, May 8, 2018 at 1:51 PM
To: Kirsty Devine <kirsty.devine@ft.com>
Cc: Daniel Rothman <daniel.rothman@ft.com>

It has just occurred to me that, because of the pending AOS, this EAD is in fact valid for 180 days past its expiry assuming a 'timely filing' of a renewal application under a USCIS directive a little over a year old. Unfortunately, the previous EAD was *not* eligible for this.

Information about it can be found here:

https://www.uscis.gov/workingunitedstates/automaticemploymentauthorizationdocumenteadextension

Apologies for my delayed recall on this there is a seemingly endless trail of caveats and exceptions to all immigration matters.

Thanks,


Ben



[Quoted text hidden]

---

**Ben MacKinnon** <ben.mackinnon@gmail.com>                                                 Wed, May 9, 2018 at 2:40 PM
To: Kirsty Devine <kirsty.devine@ft.com>
Cc: Daniel Rothman <daniel.rothman@ft.com>

Hi Kirsty & Daniel,

Just checking in to see if you've reached a decision, particularly in light of the additional info I provided last night.

Thanks,


Ben
[Quoted text hidden]

# Exhibit C-2

5/11/2018                                    Gmail - APPROVED!

 Gmail                          Ben MacKinnon <ben.mackinnon@gmail.com>

# APPROVED!

5 messages

**Ben MacKinnon** <ben.mackinnon@gmail.com>                    Thu, Apr 26, 2018 at 12:33 PM
To: daniel.rothman@ft.com

Hallelujah. Card is "approved and in production". It should switch to "mailed" in a day or two and I should have it in hand within a week.

I'll see if I can get them to tell me the legal start date on it to shave off a few days and come back in before it arrives. Either way, just a matter of days now.

Sent from my iPhone

**Ben MacKinnon** <ben.mackinnon@gmail.com>    Thu, Apr 26, 2018 at 6:41 PM    To: Daniel Rothman <daniel.rothman@ft.com>

Looks like the start date is yesterday, so it's up to HR if they want to wait for the physical card or not. Let me know what they think.
[Quoted text hidden]

**Daniel Rothman** <daniel.rothman@ft.com>                    Fri, Apr 27, 2018 at 11:45 AM
To: ben.mackinnon@gmail.com

Excellent.  Let me check with HR.

_____
Daniel Rothman
Director of Insight
Financial Times
**Office**     9175515048
**Mobile**     9173090486
daniel.rothman@ft.com

## FT  Commercial Insight

Research from the Financial Times

Begin forwarded message:

**From:** Ben MacKinnon <ben.mackinnon@gmail.com>
**Date:** April 26, 2018 at 12:33:42 PM EDT
**To:** daniel.rothman@ft.com

C-2 Page **2** of **2**

**Subject: APPROVED!**

Hallelujah. Card is "approved and in production". It should switch to "mailed" in a day or two and I should have it in hand within a week.

I'll see if I can get them to tell me the legal start date on it to shave off a few days and come back in before it arrives. Either way, just a matter of days now.

https://mail.google.com/mail/u/0/?ui=2&ik=1219820cf5&jsver=uln2IVdyjuk.en.&cbl=gmail_fe_180502.07_p5&view=pt&q=daniel%20rothman&qs=true&search=query&th=16

5/11/2018  Gmail - APPROVED!

Sent from my iPhone

*This email was sent by a company owned by Financial Times Group Limited ("FT Group"), registered office at Number One Southwark Bridge, London SE1 9HL.  Registered in England and Wales with company number 879531. This email may contain confidential information. If you are not the intended recipient, please notify the sender immediately, delete all copies and do not distribute it further.  It could also contain personal views which are not necessarily those of the FT Group.  We may monitor outgoing or incoming emails as permitted by law.*

**Ben MacKinnon** <ben.mackinnon@gmail.com>    Fri,  Apr  27,  2018  at  1:59  PM  To:  Daniel   Rothman <daniel.rothman@ft.com>

I had a feeling you might be on vacation so I sent a note to Kirsty asking. She says they need the physical card and then we'll set a start date.

I'll get a tracking number once it's mailed and aim for the day after that.
[Quoted text hidden]

**Daniel Rothman** <daniel.rothman@ft.com>    Fri,  Apr  27,  2018  at  2:57  PM  To:  Ben   MacKinnon <ben.mackinnon@gmail.com>

excellent news.  let me know when you know more.  D

_____

Daniel Rothman
Director of Insight
Financial Times
Office     9175515048
Mobile    9173090486
daniel.rothman@ft.co
m

**FT** Commercial Insight
Research from the Financial Times

[Quoted text hidden]

# Exhibit C-3

**Financial times conversation (1).m4a**

**Kirsty Devine:** [00:00:06] Hi Ben, it's Kirsty calling here. How are you?

**Benjamin MacKinnon:** [00:00:08] Good. How are you?

**Kirsty Devine:** [00:00:09] Hi. I'm not too bad. Thank you, I'm not too bad. I've got Daniel here.

**Daniel Rothman:** [00:00:11] Hello Ben

**Benjamin MacKinnon:** [00:00:13] Hello Daniel.

**Kirsty Devine:** [00:00:16] So we have the card in hand, do we?

**Benjamin MacKinnon:** [00:00:18] We do. Yes after every possible delay.

**Kirsty Devine:** [00:00:22] Yes it's been a very painful process. Hasn't it?

**Benjamin MacKinnon:** [00:00:26] Yes. Yes. In brief. Yes.

**Kirsty Devine:** [00:00:29] Yeah. Ok. So I guess we wanted to have a conversation with you because I mean I think thank you for coming back to me on e-mail. I guess, sort of, you know where we're at is we're feeling slightly nervous that the card is now only for another year. And we had expected that it would probably be for a bit longer. I don't know if you were expecting it to be longer but I guess our nervousness comes from the fact that you know potentially in less than twelve months time we could be in the same situation again. So really just wanted to have a conversation with you to kind of understand where your head was around that. And also I know when we were talking originally you were talking about going for permanent residence, so just kind of understanding if you guys have started that and if you are still planning to do that.

**Benjamin MacKinnon:** [00:01:14] Yes. So well let me let me just preface this by saying that as you know from the e-mails we had early on like it's a it's a somewhat complicated immigration situation and I also feel it's made more complicated by the fact that I'm the dependent. And I I feel like it's it's difficult to explain everything in full without going waist deep into my personal life which I don't think anybody wants to hear about. So I would like I would just put it that I don't think the year deadline really matters because I think the green card the adjustment of status is in process already now. And I would expect to probably have the green card before this is up. But even if it isn't up I don't foresee the same issue with getting the work permit extended because this time around it wasn't -- to be perfectly frank actually with this: The original issue was that there was a Visa problem and it was taking forever for my spouse's visa to get processed through his own employer which is really the partially-- First of all it was the fault of the employer for being very slow about it. And then there were holdups every step of the process from the Labor Department to the the State Department getting the visa appointment and all that type of thing. And that's a pattern that's continued right through the postal service but in in future. I don't think -- it's not going to be the same process for me.

**Kirsty Devine:** [00:02:53] Right, OK. So did you say-- your adjustment of status, so you

have started that, have you?

**Benjamin MacKinnon:** [00:02:54] Yep.

**Kirsty Devine:** [00:02:54] How long ago was that started?

**Benjamin MacKinnon:** [00:02:54] About two months ago.

**Kirsty Devine:** [00:03:04] OK. I mean again I mean I know we've had a number of conversations I think that what we're saying processing times for adjustment of status, they vary so wildly.

**Benjamin MacKinnon:** [00:03:17] Yes.

**Kirsty Devine:** [00:03:17] Again, it could be you know it could be twelve months. It could be 24 months. Kind of wide really. So what would be the plan. I mean this time I mean you know we get to the end of this year the employment authorization would expire in April in 2019. What would be a plan around if you hadn't adjusted your status by then What would you think-- would you be doing something sooner next year? Or--

**Benjamin MacKinnon:** [00:03:45] Yeah I would be. I mean I would submit it. I would submit it earlier. I mean if you know it wasn't entirely you know-- it previously wasn't really in my control entirely I don't want to you know I don't want to appear like I'm copping out of it but there are so many different moving parts but the fact is I definitely wasn't as insistent or maybe as prudent with you know getting it going because I you know if there was a few weeks of of lapse. You know it's it's like it's not the it's not the end of the world. Obviously this has been way worse. But I would I actually also want to point out that you guys don't know this but it took them three-- like when I originally had the emails and I was explaining this and I hope it's recognized that I was very forthright in the early days because I didn't want to surprise anybody which I thought would be completely unfair and egregiously immoral to just say here's my -- OK. You hired me here's my work permit for one month and now you're stuck with me. So I did want to like make sure everybody was on an equal footing. But when I finally got around to being able to submit this it took them three and a half weeks just to open the package and give me a receipt number if I had known that if I had known that was the calculation the that's completely different from what it was in the previous experiences. In the previous experiences, you know, they get it within you know 12 hours they get to give me the receipt number and I had requested an expedite my very first time doing it which didn't have a I didn't actually have a job offer but I requested it on financial hardship which I'm sure Kirsty you're familiar with all the details of it and they got back to me within five days with that: you know, they denied it and I appealed it and it was it was done so I felt like my timelines were maybe you know a touch optimistic but in the end when USCIS finally opened the package it took them another twenty five days to process the expedite requests from the senator's office. But once they had processed it it was done and processed in that five day time period. And then then it just took a week for the Postal Service to deliver it. OK so just just that's my you know my alibi I guess. But going forward I would just go for the full hundred and twenty day advanced re application for it because I think that's the maximum that they'll allow.

**Kirsty Devine:** [00:06:30] So your plan would be to apply a hundred and twenty days before the expiry date next time.

**Benjamin MacKinnon:** [00:06:36] Right. And I you know I just to give it even further context the reasons that this wouldn't have been done in the first place even if I had full control over the situation. You know the fact is these things are all operating on a relatively restrictive timelines and you know these aren't five year H1B's or whatever but you know there is like they're there they caused a lot of money, you know, you try and time it somewhat to make everything balance and you know I guess the thing to do is practically have a six month period where you're not in some sort of immigration processing debacle.

**Kirsty Devine:** [00:07:17] Yeah I know it's not easy I completely understand that Ben and you and I have spoken, I've been through it myself so I completely get that I guess I guess we're just when we saw it was twelve months Daniel and I were just super nervous that you know you've been out of business now for three months or so and you know we, you know, does this mean that we're going to find ourselves in a similarly disruptive situation once we've invested more time in training and what have you in less than twelve months time. I guess that's why we're feeling really nervous about this.

**Benjamin MacKinnon:** [00:07:51] No, you know, I would say if, uh, you know I feel I feel a little stupid making promises because I keep making you know I made good judgments the best to the best of my abilities. I made estimates about you know how long times would take. And I emailed both you-- or you early on but I mean Daniel during the process and I gave timelines and I thought OK well this is how it's supposed to work. But you know every single time I was completely wrong about how that was going to work. So I you know I realized that it might appear that there's a lack of credibility there. But you know I I'm changing the whole game for myself now. I am adjusting status. There will be a green card in the future. It's true that that can be held up. But you know I think the lesson is learned here. So if the if the only issue is that, you know, you obviously don't want to go through it again in 12 months time then I would say you know believe me that won't that won't that won't happen if there's other concerns you know if ever, you know, if it's poisoned the well or something like that then I wouldn't want wouldn't want that for anybody. But in term of this happening again in 12 months time I do not think that is a possibility and I'm 99 percent confident.

**Kirsty Devine:** [00:09:24] Yeah Ok. Yeah I know I know. I know how tough it is. You're stuck between a rock and a hard place. You want to kind of believe the timelines that have either happened previously or that you read about online or you know that the processing times that they give are but as you said it's just completely out of your hands so it's very difficult to make any, sort of, reassurances around that.

**Benjamin MacKinnon:** [00:09:50] You know well I will say that the the expedite request it. It did work. I mean I know that it might be you know somewhat false comfort but the processing times are you know I think they're criminal frankly that they've gone beyond the 90 day period and especially if I factor in how much time it took them to just open the package. You know the expedite worked at and you know they did it in a matter of 60 days which is beating you know in the end is actually beating the previous ones and certainly beating the previous -- or the current estimated wait times.

**Kirsty Devine:** [00:10:31] OK. All right. Well I mean I guess sort of leave it with us. Daniel And I need to have a chat because I'm just not sure his level of comfort around where we go to next on it. So leave it with us and we'll have a quick conversation now and then and then we'll let you know where we stand on it, if that all right, Ben.

**Benjamin MacKinnon:** [00:10:50] Okay. Yes I understand.

**Kirsty Devine:** [00:10:53] All right, perfect. Well, thanks so much for jumping on the call so quickly. We'll be back in touch shortly.

**Benjamin MacKinnon:** [00:10:57] All right thank you.

**Kirsty Devine:** [00:10:58] All right thanks. Bye

# Exhibit C-4

 Gmail

**Ben MacKinnon <ben.mackinnon@gmail.com>**

## any word?

**Daniel Rothman <daniel.rothman@ft.com>**
To: Ben MacKinnon <ben.mackinnon@gmail.com>

Thu, Mar 8, 2018 at 10:54 AM

_____

Daniel Rothman
Director of Insight
Financial Times
Office   917-551-5048
Mobile  917-309-0486
daniel.rothman@ft.com

## FT  Commercial Insight
Research from the Financial Times

_____

*This email was sent by a company owned by Financial Times Group Limited ("FT Group"), registered office at Number One Southwark Bridge, London SE1 9HL.  Registered in England and Wales with company number 879531. This e-mail may contain confidential information. If you are not the intended recipient, please notify the sender immediately, delete all copies and do not distribute it further.  It could also contain personal views which are not necessarily those of the FT Group.  We may monitor outgoing or incoming emails as permitted by law.*

# Exhibit C-5

 Gmail

**Ben MacKinnon <ben.mackinnon@gmail.com>**

## any news at all?

**Daniel Rothman <daniel.rothman@ft.com>**       Thu, Mar 15, 2018 at 10:47 AM
To: Ben MacKinnon <ben.mackinnon@gmail.com>

Daniel Rothman
Director of Insight
Financial Times
Office   917-551-5048
Mobile   917-309-0486
daniel.rothman@ft.com

**FT Commercial Insight**
Research from the Financial Times

*This email was sent by a company owned by Financial Times Group Limited ("FT Group"), registered office at Number One Southwark Bridge, London SE1 9HL. Registered in England and Wales with company number 879531. This e-mail may contain confidential information. If you are not the intended recipient, please notify the sender immediately, delete all copies and do not distribute it further. It could also contain personal views which are not necessarily those of the FT Group. We may monitor outgoing or incoming emails as permitted by law.*

# Exhibit C-6



**FINANCIAL TIMES**

FT Publications Inc.
330 Hudson Street
New York, NY 10013

Tel: (212) 641 6500

23rd March 2018

To Whom it May Concern

I am writing regarding the employment authorization renewal application made by Ben MacKinnon. Whilst we appreciate that this is an incredibly busy time, there are significant impacts in our business as a result of this delay.

Specifically, as a result of Ben's absence, the FT Global Commercial Strategy and Insights team has suffered in numerous ways:

- we have been slower to respond to advertising client requests - this can have a long term negative impact on our client relationships if it continues

- we have had to delay and/or postpone several client meetings as we have been unable to prepare properly for these meetings without the resource

- we have delayed an industry thought-leadership project as we are unable to focus on this given the additional work we have all had to pick-up in Ben's absence.

Respectfully, your urgent consideration of this case would be very much appreciated and welcomed by Financial Times Publications.

Yours sincerely

Kirsty Devine
Head of US HR & Global Projects

# Exhibit C-7

 M Gmail

**Ben MacKinnon <ben.mackinnon@gmail.com>**

---

## Hi -

---

**Daniel Rothman** <daniel.rothman@ft.com>
To: Ben MacKinnon <ben.mackinnon@gmail.com>

Tue, Apr 10, 2018 at 9:53 AM

---

Daniel Rothman
Director of Insight
Financial Times
Office   917-551-5048
Mobile   917-309-0486
daniel.rothman@ft.com

**FT Commercial Insight**
Research from the Financial Times

---

*This email was sent by a company owned by Financial Times Group Limited ("FT Group"), registered office at Number One Southwark Bridge, London SE1 9HL. Registered in England and Wales with company number 879531. This e-mail may contain confidential information. If you are not the intended recipient, please notify the sender immediately, delete all copies and do not distribute it further. It could also contain personal views which are not necessarily those of the FT Group. We may monitor outgoing or incoming emails as permitted by law.*

# Exhibit C-8

 Gmail

**Ben MacKinnon <ben.mackinnon@gmail.com>**

---

## (no subject)

**Daniel Rothman <daniel.rothman@ft.com>**
To: Ben MacKinnon <ben.mackinnon@gmail.com>

Thu, May 10, 2018 at 3:32 PM

Hi Ben,

Given the delays and future uncertainty, I do not feel we can proceed.

Sorry this has not worked out and I wish you the best of luck.

Best,
Daniel

---

Daniel Rothman
Director of Insight
Financial Times
Office   917-551-5048
Mobile   917-309-0486
daniel.rothman@ft.com

## FT Commercial Insight
Research from the Financial Times

---

*This email was sent by a company owned by Financial Times Group Limited ("FT Group"), registered office at Number One Southwark Bridge, London SE1 9HL. Registered in England and Wales with company number 879531. This e-mail may contain confidential information. If you are not the intended recipient, please notify the sender immediately, delete all copies and do not distribute it further. It could also contain personal views which are not necessarily those of the FT Group. We may monitor outgoing or incoming emails as permitted by law.*

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 520-2019-02075 |

and EEOC

_____
*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)*<br>**Mr. Benjamin Mackinon** | Home Phone *(Incl. Area Code)*<br>**(646) 270-4273** | Date of Birth |
|---|---|---|

| Street Address<br>**170 Delancey Street 4, Nyc, NY 10002** | City, State and ZIP Code |
|---|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>**THE FINANCIAL TIMES** | No. Employees, Members<br>**500 or More** | Phone No. *(Include Area Code)* |
|---|---|---|

| Street Address<br>**330 Hudson Street, Nyc, NY 10013** | City, State and ZIP Code |
|---|---|

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

| ☐ RACE | ☐ COLOR | ☒ SEX | ☐ RELIGION | ☒ NATIONAL ORIGIN |
|---|---|---|---|---|
| ☐ RETALIATION | ☐ AGE | ☐ DISABILITY | | ☐ GENETIC INFORMATION |
| ☒ OTHER *(Specify)* | | | | |

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **04-02-2018**    Latest **05-08-2018**

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I am a 32-year-old Canadian male who applied for a position with the above-named entity on April 2018 and after showing interest both orally and written that they wanted to hire me, the company told me they did not want to hire me based on my work permit expiring date.

The reason that I was given by the head of human resources was, that my employment authorization document was going to expire within one year. The head of Human resource in the company Ms. Kirsty Divine, also expressed that they just wished that my work permit was a little longer and implied that it was going to be to much of a burden having to deal with USCIS, and my documentation.

During the application process I had several telephone conversations and e-mail conversations with both Ms. Divine and with Mr. Daniel Rothman, the Director of insights of the company(see attached e-mails). Most of the conversation were held with Ms. Divine and she often expressed concerned regarding my working status expiry date.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Feb 22, 2019**<br>Date          *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*<br><br>FEB 22 2019 |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | **520-2019-02075** |

and EEOC

*State or local Agency, if any*

I also chose to make them aware that I was also in the process of a readjustment of status through my spouse. I thought that it might give them a piece of mind and that they would understand that there was no risk of hiring me because, I would still become a permanent legal alien. Ms. Divine started to ask additional and invasive questions regarding my documentation process.

On multiple conversations prior to the decision-making process, Ms. Divine asked me about how long the card was (new working permit card) going to take to arrive and I had a tracking number that showed that the card was already on its way. When I told Ms. Divine that since I had time to submit all documentation I, should be able to start and then submit the new card as soon as I receive it. Ms. Divine then said that she was going to talk with management and that she would get back to me.

On or about the next day, Ms. Divine contacted me and asked me specifically when the expiry date for the new card would be. When I received the card, I e-mailed Ms. Divine and gave her the expiration date.

The next day, Ms. Divine called me and said her, and Mr. Rothman wanted to speak to me over the phone. The whole phone conversations were about the parameters of my work permit and about my pending green card processing. After I had answered all their questions, both said that they needed to discuss this further internally.

I feel that I was not hired because I did not have a permanent green card and because I was not a US Citizen.

Based on the above, I believe I was discriminated and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended.



EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
NEW YORK DISTRICT OFFICE
**FEB 2 2 2019**
DATE RECEIVED

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Feb 22, 2019**<br>*Date*          *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5ᵗʰ Floor
New York, NY 10004-2112
For General Information: (800) 669-4000
TTY: (800)-669-6820
District Office: (212) 336-3620
General FAX: (212) 336-3625

Mr. Benjamin Mackinon
170 Delancey Street
New York, NY 10002

Re:    EEOC Charge No. 520-2019-02075
       Benjamin Mackinon v The Financial Times

Dear Mr. Mackinon,

**The Equal Employment Opportunity Commission** (hereinafter referred to as the "**Commission**") has reviewed the above-referenced charge according to our charge prioritization procedures. These procedures, which are based on a reallocation of the Commission's staff resources, apply to all open charges in our inventory and call for us to focus our limited resources on those cases that are most likely to result in findings of violations of the laws we enforce.

In accordance with these procedures, we have examined your charge based upon the information and evidence you submitted.  You allege you were discriminated against because of your national origin, and immigration status.

Based upon this analysis the Commission is unable to conclude that the information establishes a violation of Federal law on the part of Respondent.  This does not certify that Respondent is in compliance with the statutes.  No finding is made as to any other issue that might be construed as having been raised by this charge.

The Commission's processing of this charge has been concluded. Included with this letter is your Notice of Dismissal and Right to Sue.  Following this dismissal, you may only pursue this matter by filing suit against the Respondent named in the charge within 90 days of receipt of said notice.  Otherwise, your right to sue will be lost.

Sincerely,

_____ for

**Kevin Berry**
**District Director**

3/4/19
Date

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: **Benjamin Mackinon**<br>**170 Delancey Street 4**<br>**New York, NY 10002** | From: **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2019-02075** | **Silvia Y. Deng-Batista,**<br>Investigator | **(212) 336-3761** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Kevin J. Berry_   3/4/19

**Kevin J. Berry,**
**District Director**

*(Date Mailed)*

Enclosures(s)

cc:

**THE FINANCIAL TIMES**
**330 Hudson Street**
**New York, NY 10013**